UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RAYMOND CARR, | Case No. 12-15074 |
| Plaintiff, | Lawrence P. Zatkoff |
| v. | United States District Judge |
| RAYMOND BOOKER, *et al.*, | Michael Hluchaniuk |
| Defendant. | United States Magistrate Judge |
| _____/ | |

# REPORT AND RECOMMENDATION
## MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 22, 28)

### I.   PROCEDURAL HISTORY

On November 16, 2012, plaintiff filed this prisoner civil rights case against a multiple of prison officials at two separate Michigan Department of Corrections facilities.  (Dkt. 1).  On January 17, 2013, this matter was referred to the undersigned for all pretrial proceedings.  (Dkt. 8).  On March 18, 2013, defendants Bailey, Booker, Burke, C. Daley, J. Daley, Durant, Hough, LeTarte, MacLaren, Mackie, Mansfield, McLean, Moses, Nadeau, O'Brien, Schroeder, Steward, Watkins, Witfield, and Wood filed a motion for summary judgment.  (Dkt. 18).  Defendants contend that plaintiff failed to exhaust his administrative remedies, failed to show that he was engaged in protected conduct, such that his retaliation claims fail, that they are entitled to qualified immunity, and that plaintiff failed to

sufficiently allege the personal involvement of defendants Woods, Bailey, Mackie, McLean, and Schroeder. (Dkt. 18). Defendant Gause filed a motion for summary judgment on April 3, 2013. (Dkt. 22). She too claims that plaintiff's failure to exhaust, plaintiff's failure to engage in protected conduct, and qualified immunity all bar plaintiff's claims. (Dkt. 22). Finally, on May 3, 2013, defendants Godwin and Sanders moved for summary judgment, for the same reasons identified by defendant Gause. (Dkt. 28). Plaintiff filed responses to all three motions. (Dkt. 26, 35, 38). Defendants filed a single reply brief in support of their motions. (Dkt. 37). These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

## II. FACTUAL BACKGROUND

At all times relevant to the allegations in the complaint, plaintiff was incarcerated at the Mound (NRF) and Chippewa (URF) Correctional facilities. NRF closed in January of 2012. The NRF defendants are Warden Raymond Booker, Deputy Warden Darrell Steward, Resident Unit Manager Clinton Watkins, Assistant Resident Unit Supervisor Vernita Moses, and Corrections Officers Jewell Daley, Annae Sanders, Larry Godwin, Cynthia Gause, and Burgess

Whitfield.[1]  The URF Defendants are Warden Jeffrey Woods, Deputy Warden Duncan MacLaren, Resident Unit Manager Jacqueline Nadeau, Deputy Warden Cecil Daley, Sergeant John Burke, Corrections Officer Edward LeTarte, Assistant Resident Unit Supervisor Donald Mansfield, Hearings Investigator Danny Durant, Departmental Analyst Tracy Schroeder, Deputy Warden Thomas Mackie, Grievance Coordinator Michael McLean, and Inspector Lawrence Hough.  The remaining Defendants are Correctional Program Coordinator Michele Bailey and Administrative Law Judge Sheila O'Brien.

On June 3, 2011, NRF staff, acting on information that plaintiff had engaged in a romantic relationship with a prison volunteer, decided to place plaintiff in administrative segregation and perform a cell search.  Found in plaintiff's area of control were several items considered contraband per MDOC policy: two greeting cards, one with the signature of the suspected volunteer, various handwritten notes, a men's silver link watch, and a bottle of lotion purchased outside of the facility.  A critical incident report was completed in this matter and inmate plaintiff was sanctioned for his relationship with the prison volunteer.  (Dkt. 18-2).  On June 23, 2011, the Security Classification Committee (SCC) met to discuss this incident and plaintiff was subsequently transferred to

---

[1] NRF defendants W. Doucet and Cornell Howard have not yet been served.

URF on June 23, 2011. On his arrival at URF on June 24, 2011, prison employees searched his property. The search uncovered a detached piece of hard metal located inside of plaintiff's typewriter and a pumice stone with sharpening marks. Plaintiff was placed in administrative segregation and charged with possession of a weapon, a Class 1 misconduct violation pursuant to MDOC policy. On July 6, 2011, a misconduct hearing was held and plaintiff was ultimately found guilty of possession of a weapon. Plaintiff made no claim of staff retaliation or conspiracy during the misconduct hearing. (Dkt. 18-3, Administrative Record of Hearing).

Plaintiff attempted to file a grievance claiming retaliation by URF staff, but it was rejected and plaintiff was instructed to file a request for rehearing. His subsequent request for a rehearing was denied. As compensation for his retaliation claim, plaintiff seeks damages of $8,946 against defendant Booker and $13,419 against defendant Woods. Plaintiff also seeks punitive damages of $25,000 each against all 25 defendants.

### III.   DISCUSSION

#### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding*

*v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

  B. <u>Exhaustion of Administrative Remedies</u>

    1. Legal Standards

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms

of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful

that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

    C.    <u>Analysis and Conclusions</u>

        1.    NRF defendants

According to defendants, plaintiff has only completed the grievance process through Step III for two grievances, one of which is unrelated to the issues in this case and one of which was rejected because it involved a misconduct report. (Dkt. 18-5). Thus, defendants claim that grievances regarding any of the events at NRF have not been exhausted.

In response, plaintiff argues that he attempted to exhaust his grievance, but was prevented from doing so by defendants' failure to respond. According to plaintiff, he first sent a complaint to Warden Booker on June 16, 2011 that he was placed "in the hole" on June 6, 2011, but he did not receive a hearing or misconduct report. (Dkt. 35, Pg ID 363). He also said that Office Gause tore up several of his kites and accused him of being a snitch. Plaintiff states in his affidavit that he filed several grievances against the NRF defendants in June 2011, but never received any response. (Dkt. 35, Pg Id 365-366). Plaintiff also claims that he filed grievances in August and October 2011 and never received responses. He says that he received a memo dated December 29, 2011 indicating that he should file his grievance at Step III to the MDOC Director's office in Lansing because NRF was closing. He did so on February 24, 2012 and on March 5, 2012,

the MDOC Step III grievance director's office told him to try to re-file his grievance. He tried to do so, but was told by URF officials that NRF was closed and the grievance could not be processed. Plaintiff tried to file his grievance again in March 2012, with the Legislative Ombudsman's Office. They advised that they were too busy to assist plaintiff. *Id*. Plaintiff produced a copy of the Step I grievance he filed at URF regarding the events at NRF and refers to the "several" grievances filed in June and July 2011, but did not produce copies of those. (Dkt. 35, Pg ID 368). He also provided a copy of the Step I grievance filed in October 2011. (Dkt. 35, Pg ID 370). The December 29, 2011 memo plaintiff received stated as follows:

> Your grievances received in Nov. are being returned because we are unable to file them due to the closing of this facility and the staff members being grieved are being transferred....you are advised to file your grievances and any future complaints against Mound Officials to MDOC Directors Office in Lansing.

(Dkt. 35, Pg ID 372). Plaintiff then sent a new Step I grievance to the MDOC Directors Office complaining about the events of June, 2011 and the subsequent refusals to address his grievances. (Dkt. 35, Pg ID 374). Plaintiff's correspondence was returned to him because he failed to include a legible/completed Step I form, a Step I response, a legible/completed Step II grievance appeal, a Step II response, and a legible reason for a Step III appeal.

Plaintiff was also informed that he must complete the entire Step I and Step II grievance process before appealing to Step III. (Dkt. 36, Pg ID 376).

Plaintiff does not claim that he attempted to file any Step II or Step III appeal of any of his grievances filed in June 2011. It is clear that plaintiff may not keep filing Step I grievances because he did not receive a timely response to his first grievance. Rather, just as prison officials may not disregard the grievance procedure by refusing or failing to respond to a grievance at any step of the process in order to prevent a prisoner from exhausting his grievance, *see Boone v. Fighter*, 2007 WL 2694321, *15 (E.D. Mich. 2007), a prisoner may not refuse to complete the grievance process, despite the failure to receive a timely response at any step of the grievance process. *See Smothers v. MDOC*, 2007 WL 1238898, *1 (W.D. Mich. 2007). The *Smothers* court, in applying *Woodford*, pointed out that under Michigan Department of Corrections policy, if a prisoner "does not receive a timely response" to a grievance, he may appeal that matter to Step II in the grievance process. *Smothers*, at *1. In *Smothers*, the plaintiff admitted that he did not file a Step II grievance against the defendants after failing to receive a response. Therefore, the court concluded that the plaintiff failed to follow the policy set forth by the MDOC to proceed to the next step in the grievance process. And, accordingly, pursuant to *Woodford*, the plaintiff failed to meet the exhaustion requirement. *Id.*; *cf. Brooks v. City of Pine Knot*, 2009 WL 3414929, *3 (E.D. Ky.

2009) (applying the Federal Bureau of Prisons grievance regulation, the Court concluded that "[u]nder federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it.").

Here, the undersigned concludes that defendants have met their burden that plaintiff did not exhaust his administrative remedies as to the NRF defendants. Plaintiff has not disputed that he did not proceed to Step II and Step III for his grievances that he claimed to have filed in June 2011. Plaintiff's persistence in filing subsequent Step I grievances does nothing to exhaust his original grievance. Further, plaintiff's efforts while housed at URF while NRF was closing are not sufficient to exhaust his administrative remedies. Plaintiff was required by the grievance procedure to proceed to Step II and Step III, even though he did not receive a response to the Step I grievance filed in June 2011. Waiting until many months later to complain that no one responded to his initial grievance does not advance his cause and does not constitute proper exhaustion of administrative remedies.

    2.    URF Defendants

Defendants argue that Carr failed to claim retaliation by URF staff at his misconduct hearing, and therefore, has failed to exhaust his administrative remedies. According to defendants, *Siggers v. Campbell* established that a

prisoner must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011). Otherwise, the prisoner is precluded from using such a claim as a basis to request a rehearing. *Id*. at 693-94.[2] Defendants contend that the administrative record of the hearing provides no proof that plaintiff raised retaliation as an issue. Defendants maintain that plaintiff is, therefore, unable to preserve the issue for the purpose of a rehearing. Thus, defendants argue that plaintiff failed to exhaust his administrative remedies, and the portion of plaintiff's claims that involve URF staff should also be dismissed. It is clear from the record that plaintiff made no such claims during his misconduct hearing and admits as much in his responsive brief.[3] (Dkt. 18-3). According to

---

[2] Other, unpublished decisions appear to be contrary. *See e.g.*, *Ragland v. City of St. Louis*, 2012 WL 511827, *4 (E.D. Mich. 2012) ("[W]hile it is true that Plaintiff cannot grieve the decision of an administrative hearing officer, his Complaint allegation is that the underlying misconduct charge—not the hearing officer's decision—was retaliatory. Plaintiff could have and was, therefore, required to grieve the alleged retaliatory misconduct charge.") (footnote omitted), citing *Boyd v. Ray*, 19 Fed.Appx. 209, 2001 WL 1042261 (6th Cir. 2001) (where the plaintiff's claim did not involve the administrative hearing officer's decision but rather an allegation that the underlying misconduct charge was false, he was required to exhaust his administrative remedies).

[3] Rather, while housed at URF, plaintiff filed a grievance claiming retaliation, having his computer broken, and having evidence falsified against him during the misconduct hearing. (Dkt. 18-5, Pg ID 209). This grievance was rejected because the issues contained in the grievance were deemed "non-grievable" per PD 03.02.130, which provides that decisions made in misconduct hearings by a hearing officer, including property disposition issues and issues relating directly to the hearing process are not grievable and must be pursued through the rehearing process not the grievance process. (Dkt. 18-5, Pg ID 210). The rejection of the grievance was upheld at Steps II and III. (Dkt. 18-5, Pg ID 208, 206). As explained in *Siggers*, "Per PD–03.02.130—Prisoner/Parolee Grievances, decisions made by a Hearing Officer on

defendants, plaintiff's statement only argues that the metal piece from his typewriter may have become dislodged during transport from NRF to URF. Therefore, defendants contend that he did not properly exhaust the rehearing process and all URF defendants are entitled to dismissal.

In response, plaintiff argues that at no time during the grievance process did defendants advise him or raise the issue that he had forfeited his retaliation claim by failure to raise it at the administrative hearing. (Dkt. 26, Pg ID 286). Plaintiff does not offer any authority for the proposition that defendants were required to advise him that he was required to raise his retaliation claim at the initial hearing, even assuming they were aware he had such claim. Thus, this argument does not raise an issue of fact regarding exhaustion of this claim.

Plaintiff also argues that he was not aware of the retaliation claim until after the hearing occurred when Officer Oja came to plaintiff's cell and advised him that he was aware that plaintiff was "being set up." *Id*. Plaintiff was transferred to URF on June 23, 2011. The misconduct hearing at URF was held on July 6, 2011. At a minimum, in a letter authored by plaintiff on March 25, 2013, and proffered

---

Minor and Major misconducts ... and issues that are directly related to the hearing process are nongrievable. Your avenue of recourse is through the Request for Rehearing process within P--03.03.105--Prisoner Discipline, and not through the prisoner grievance process." *See also Bean v. Tribley*, 2013 WL 3755768 (W.D. Mich. 2013) ("Plaintiff was required to submit a Request for Rehearing to the Hearings Administrator in order to exhaust his administrative remedies. MDOC PD 03.03.105(SSS)."). Here, while plaintiff filed for rehearing (and included the retaliation claim), that was ineffective to exhaust his grievance because, as discussed above, he did not raise the retaliation issue at the initial hearing.

in support of his opposition to the motion for summary judgment, he admits that on June 24, 2011, well before the hearing, he was aware of the alleged "set up" as he wrote the following:

> On 6/24/11, after being transferred to Chippewa, I was again placed in seg. for a damaged typewriter which was broken by staff at Mound. I was charged with "Possession of a Weapon" for said broken typewriter. Sgt. Burke stated to me while standing in front of my cell in seg. "I know the piece found in your typewriter belongs to it, but you know what this is about."

(Dkt. 26, Pg ID 304). Plaintiff explained in his letter that this statement was part of the factual basis for his retaliation claim. *Id*. Clearly, plaintiff believed that the misconduct charge was retaliatory well before the hearing. Yet, he failed to raise this issue at the hearing, rendering his excuse for not complying with this step in the exhaustion process to be without a factual basis or merit. Therefore, under *Siggers v. Campbell*, a published Sixth Circuit decision, his claim for retaliation was not properly exhausted.

In the view of the undersigned, defendants' motions for summary judgment should be **GRANTED** because plaintiff failed to exhaust any of his claims and his complaint should be **DISMISSED** without prejudice. Given the foregoing conclusions, the remaining arguments for summary judgment posited by defendants need not be addressed.

IV. **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

| | |
|---|---|
| Date: January 10, 2014 | s/Michael Hluchaniuk<br>Michael Hluchaniuk<br>United States Magistrate Judge |

### CERTIFICATE OF SERVICE

I certify that on January 10, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kevin R. Himebaugh and Robert J. Jenkins, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Raymond Carr, #232256 G. Robert Cotton Correctional Facility, Central Complex, 3500 N. Elm Rd, Jackson, MI 49201.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
